[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 5, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11713

_____

D. C. Docket No. 02-00991-CV-WS-L

VIOLA WILLIAMS UNDERWOOD,

Plaintiff-Appellant,

versus

PERRY COUNTY COMMISSION,
ALBERT TURNER,
ALBERT PAIGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(December 5, 2005)**

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

PER CURIAM:

After we vacated our earlier opinion, we ordered supplemental briefs from the parties. We now substitute this opinion for our earlier one.

The issue in this appeal is whether a complaint of sex discrimination regarding the hiring of a truck driver for Perry County, Alabama, survives summary judgment when the applicant, Viola Underwood, failed to establish that a male was hired for the position. Underwood sued the County Commission and its decision maker, Albert Paige, and the district court granted summary judgment in favor of the Commission and Paige. We affirm.

## I. BACKGROUND

Before we address the parties' legal arguments, we address two matters. We begin with a discussion of the facts, including the hiring process in Perry County, the events that led to Underwood's complaint, and the other individuals who were hired by Perry County around the time of Underwood's application. We then explain the procedural history of the appeal.

### *A. Facts*

Because summary judgment was entered against Underwood, we view the evidence in the light most favorable to Underwood whenever there is a dispute of fact. See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995). We address

one aspect of the record that was determinative in the district court, but is not determinative in this appeal: Underwood's prior convictions for speeding. We also address the aspect of the record that is determinative in this appeal: whether a male was hired by the County to fill the vacancy for which Underwood applied.

### 1. Hiring Process in Perry County

When a job opening occurs in Perry County, the vacancy is advertised in the local newspaper. Prospective employees submit an application for the advertised job through the state unemployment office. The unemployment office then forwards the application to the clerk of the Perry County Commission who submits the application to the superintendent of the appropriate department.

Applications for job openings with the Perry County Highway Department are submitted to Albert Paige, Superintendent of the Perry County Shed Office. Paige reviews and screens the applicants and conducts interviews. After this process, Paige recommends a candidate to the Commission for approval. The Commission then decides by a majority vote whether to accept or reject the recommendation. In the fourteen years that Paige has been superintendent, the Commission has never rejected a recommendation that he has made to the Commission.

When he considers an applicant for a truck driver position, Paige ensures

that the applicant has the required commercial driver's license and relevant driving experience. Paige testified that skill, experience, lack of substance abuse, seniority, over-the-road experience, good driving record, and common-sense judgment were qualities of a "good truck driver." He explained that a "good driving record" is accident-free, with no citations for speeding or driving under the influence of alcohol or drugs. Paige later testified, in a declaration executed after his deposition and the close of discovery, that "one of the most important qualifications for such a position is a good driving record. In fact, a good driving record, including no convictions for driving under the influence or serious moving violations[,] is a qualification for a job as a truck driver with Perry County."

As part of its process for hiring truck drivers, Perry County determines from records of the Alabama Department of Motor Vehicles whether prospective employees have any automobile accidents or citations for moving violations. Paige testified that this background check is completed "before hiring a driver." There is no evidence that Paige checked Underwood's driving records at the Department of Motor Vehicles when Paige considered her application.

2. Viola Underwood's Application for Employment

Sometime in 1998, while she was working at Wal-Mart, Underwood had a conversation with Paige about being hired as a truck driver for the county.

Underwood asked Paige if the county hired females as truck drivers. Paige replied affirmatively and "told [her] how to get a job, and that if [she] got the experience he would hire a woman." Paige stated that Underwood needed to obtain the required training and that she "would need to go up under the hood and get familiar with the parts and everything."

In November 2000, Underwood began her training as a truck driver at a truck driving program in Selma, Alabama, and she completed this training in January 2001. On February 5, 2001, Underwood obtained a Class A commercial driver's license, which enabled her to drive large trucks, including 18-wheel tractor-trailers. With her Class A license, Underwood also had a hazardous materials endorsement and a passenger endorsement. In her deposition, Underwood testified that she had two months of driving experience as part of a training program with Wiley Sanders where she drove 18-wheel, 13-speed vehicles over long distances with a trainer.

In January 2001, Underwood visited the Perry County Shed and spoke with Paige about possible employment opportunities as a truck driver with the county. Underwood testified that Paige told her that there was one Class A driver position open and two Class B driver positions were "going to be . . . open[]." Underwood's testimony is unclear about when the Class B positions were going to

become vacant. Although counsel for the Commission and Paige asked Underwood to clarify her "going to be . . . open[]" statement, the record does not contain the next page of the deposition transcript in which Underwood presumably answered that question.

In Alabama, a Class B driver is licensed to drive a "straight truck" with either a single, dual, or triple axle, and weight rating of 26,000 pounds or more. An example of a Class B truck is a small dump truck. A Class A driver is licensed to drive anything a Class B driver can drive, as well as "tractor-trailer[s] with the combination, two part vehicle."

Paige said that he was going to hire David Dallas for the Class A position because of Dallas's extensive experience. Paige said he would hire Underwood for one of the Class B positions if she applied. Underwood told Paige that she would take any position as a truck driver, including the Class B position, even though she had a Class A license.

The record shows that Underwood submitted an application for each position as it became open. After Underwood's conversation with Paige in January 2001, Underwood twice applied for employment as a truck driver. Underwood filed applications three times – in January 2001, March 2001, and May 2001, but Underwood testified that she submitted the third application form

after the County lost her second one. Although the record does not contain either of her other two applications, the record contains a copy of the May 2001 application.

The May 2001 application stated that Underwood was applying for a truck driver position with the county, but the application did not specify whether Underwood sought a Class A or Class B position. The application did not request and Underwood did not supply any information regarding her driving record or license status. Underwood testified that she never interviewed for and was not offered any job with Perry County.

It is undisputed that Underwood had two convictions for speeding in Perry County District Court in the five years before her application. Certified records from Perry County reflect that on February 11, 1998, Underwood was found guilty of driving 71 mph in a 45 mph zone, and on March 23, 1999, she was found guilty of driving 73 mph in a 55 mph zone. Neither Paige nor the Commission knew about these convictions when they decided not to hire Underwood.

The Commission and Paige contend that Underwood's convictions for speeding in excess of 15 miles an hour above the posted speed limit are serious traffic violations. Underwood does not dispute that contention. Both federal regulations for commercial drivers and Alabama law provide that speeding in

7

excess of 15 miles an hour above the speed limit is a serious traffic violation, and convictions for a serious traffic violation temporarily suspend the license of a commercial driver. 49 C.F.R. § 383.51 (c); Ala. Code § 32-9A-2.

### 3. Others Hired by Perry County

David Dallas was hired for the position as a Class A truck driver, but Underwood conceded that he was better qualified. Underwood never identified the individual who received the other job for which she applied. The record contains the names and sexes of individuals hired as Class B truck drivers during 2001 and 2002. Some of the drivers offered jobs by the County were males, but others were females.

According to Paige's testimony, three males were hired as Class B drivers during 2001 and 2002. Drake Wright was hired as a truck driver around 2000 or 2001. Although he had a Class A license, he drove a Class B truck for the county. Wright also had a commercial driver's license and had been trained at a truck driving school. Wright also had been employed as a driver for a local wood company before his employment with Perry County. Stanley Stewart was hired as a truck driver "[p]robably somewhere mid 2001, early 2002." Stewart had a commercial driver's license and a Class A license, but was hired for a Class B position. Stewart had experience with a tandem truck, which is a ten-wheeled

8

truck with a dual axle on the rear. Paige did not think that Stewart had received training at a driving school. Kwame McKinney was hired as a truck driver in 2001. Like Wright and Stewart, McKinney had a commercial driver's license and a Class A license, but he drove a Class B truck for the county. McKinney did not have any previous driving experience, but he had been to truck driving school.

According to Paige's testimony, two females were hired as Class B drivers during 2001 and 2002. Michelle Lee was hired as a truck driver in 2000 or 2001. Although Lee initially accepted the position, she later called and declined employment. Johnnie Shepperd was employed by the county as a Class B truck driver for approximately seven months. Paige testified that Shepperd was employed after Lee declined employment with the county, between 2001 and 2002.

### B. Procedural History

On December 31, 2002, Underwood sued the Perry County Commission; Albert Turner, a Perry County Commissioner; and Albert Paige. Underwood alleged that she was not hired based on her sex, in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. The Commission was sued as a government entity, and both Turner and Paige were sued in their individual capacities. After the defendants filed a

9

motion for summary judgment, Underwood conceded that Turner was not a proper defendant, and the district court dismissed the claims against him.

The district court granted summary judgment for the Commission and Paige on the ground that Underwood failed to establish a prima facie case of discrimination. The district court concluded that Underwood could not establish that she was qualified for the position because she had two citations for speeding that rendered her ineligible for the position. Although she did not dispute the existence of the citations, Underwood contended that the Commission and Paige could not use this evidence to defeat her qualifications because the Commission and Paige did not base their decision not to hire her on the speeding citations. The district court stated that no party identified who was hired to fill the vacancy for which Underwood applied, but the court declined to address whether Underwood satisfied her burden of proving that a male was hired to fill the vacancy.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1357 (11th Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); see Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S. Ct.

10

2548, 2552 (1986).  A genuine factual dispute exists "if the jury could return a verdict for the non-moving party."  Damon, 196 F.3d at 1358 (quoting United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)).  In examining the record, we view the evidence in the light most favorable to the non-moving party.  See Damon, 196 F.3d at 1358.

### III.  DISCUSSION

To resolve this appeal, we address two matters.  We first discuss the governing law in the evaluation of a complaint of sex discrimination supported by circumstantial evidence regarding a refusal to hire an applicant.  We then address whether Underwood established a prima facie case of sex discrimination.  Although we conclude that the district court correctly determined that Underwood failed to establish a prima facie case, the basis of our conclusion is different from the basis of the judgment of the district court.  Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 778 n. 3 (11th Cir. 2002) (appellate court can affirm on any ground supported by the record).

*A.  The Law Governing a Complaint of Sex Discrimination Supported by Circumstantial Evidence Regarding a Refusal to Hire.*

Underwood asserted claims of gender discrimination in violation of both Title VII and the Fourteenth Amendment.  Although the Supreme Court "do[es]

11

not regard as identical the constraints of Title VII and the Federal Constitution," Johnson v. Transp. Agency, Santa Clara County, Ca., 480 U.S. 616, 632, 107 S. Ct. 1442, 1452 (1987), "[w]hen section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same." Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n. 16 (11th Cir. 1982) (citing Whiting v. Jackson State Univ., 616 F.2d 116, 123 (5th Cir. 1980)). We, therefore, discuss these claims under the same framework.

A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence. Wilson v. B/E Aerospace , Inc., 376 F.3d 1079, 1085 (11th Cir. 2004) (citing Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)). Underwood alleges that the Commission and Paige discriminated against her based on her sex, but Underwood did not present any direct evidence of discrimination in support of her complaint. Underwood argues that circumstantial evidence supports her complaint.

We use the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981), to evaluate a complaint of sex discrimination regarding a failure to hire when the complaint is supported by circumstantial evidence. Under this

12

framework, the plaintiff first must establish a prima facie case of sex discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). To establish a prima facie case, the plaintiff must prove that (1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals outside of her protected class were considered or hired for the position. See Wilson, 376 F.3d at 1087, 1089; Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028(11th Cir. 1987). The prima facie case creates a rebuttable presumption that the employer acted illegally. Combs, 106 F.3d at 1528. "At that point, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for [not hiring] the plaintiff . . . . If the employer does so, the burden shifts back to the plaintiff to introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997) (quotations and citation omitted).

### B. Whether Underwood Established a Prima Facie Case of Sex Discrimination.

Although we agree with the district court that Underwood failed to establish a prima facie case of sex discrimination, we base our decision on another reason.

13

Underwood established that she is a member of a protected class who applied for and was denied employment, but she failed to establish that a male was hired to fill the vacancy for which she applied. We decline to address whether the evidence of Underwood's speeding convictions, which were discovered after Underwood commenced this litigation and upon which the district court based its decision, could be used by the Commission and Paige to establish that Underwood was not qualified for the position of truck driver.

Our precedent does not require Underwood to "identify the successful applicant for a position under the McDonnell-Douglas prima facie framework; she is only required to establish that the successful applicant [was] not within her protected class." Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998). If the record showed that the Commission and Paige hired only males for the positions which Underwood applied, then Underwood would satisfy her burden of proving that a person outside of her protected class was hired. It is not necessary that Underwood name the individual hired by the Commission and Paige; it is necessary that Underwood present evidence that the favored applicant was male.

Underwood failed to satisfy this burden. Although the district court did not base its decision on this ground, the district court explained that Underwood "makes no pretense of naming the successful applicant." After reviewing the

14

record, the district court stated that it had "no way of knowing whether the job Underwood sought was filled by a man or a woman, much less who that person was or what his or her qualifications were." For that reason, the Commission and Paige argue Underwood failed to establish that the position for which she applied was filled by a person outside her protected class.

On appeal, Underwood still failed to identify the individual who was hired for the position for which she applied. Underwood did not discuss this requirement in her brief to this Court, but left us to guess whether there was a position for which she applied and whether that position was filled by a man or woman. The record reveals that six individuals were hired near the time Underwood's two applications were pending. One of those individuals was David Dallas, who was hired as a Class A driver, but Underwood conceded, in her deposition, that Dallas was more qualified than her. Three other individuals, like Dallas, were male – Wright, Stewart, and McKinney – but two individuals were female – Lee and Shepperd. The only inference about gender and the hiring of a truck driver is that both men and women were hired. When Underwood failed to identify a position for which she applied and the gender of the person who filled that position, she failed to carry her burden to avail herself of the McDonnell Douglas presumption. That failure is fatal to her complaint of discrimination.

## IV. CONCLUSION

We affirm the summary judgment entered in favor of the Commission and Paige.

**AFFIRMED**.