[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-11713

_____

D.C. Docket No. 02-00991 CV-WS-L

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 21, 2006
THOMAS K. KAHN
CLERK

VIOLA WILLIAMS UNDERWOOD,

Plaintiff-Appellant,

versus

PERRY COUNTY COMMISSION,
ALBERT TURNER,
ALBERT PAIGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(June 21, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, and
PRYOR, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), rehearing en banc is DENIED.

/s/ J. L. Edmondson

_____
            CHIEF JUDGE

CARNES and PRYOR, Circuit Judges, concurring in the denial of rehearing en banc:

We write to clarify one issue. The dissent contends that the panel placed too heavy a burden on Underwood to establish a prima facie case under the McDonnell Douglas framework, and ignored the "strong evidence of discriminatory motive by Perry County." The dissent then addresses evidence presented by Underwood to the district court, but not mentioned in her arguments to this Court, which the dissent contends established an inference of discrimination.

Underwood attempted to prove discrimination in hiring through circumstantial evidence and relied upon "the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)." Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997). Under that framework, Underwood had to establish a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. See id. at 1527-28 (citations omitted). It is well-settled that "[t]he prima facie case method established in McDonnell Douglas was 'never intended to be

3

rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482 (1983) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949 (1978)).

Nothing in the panel opinion suggested that Underwood was confined to proving intentional discrimination through a rigid McDonnell Douglas framework. Underwood confined her argument to this Court to that framework. In her written and oral arguments, Underwood did not even mention the affidavit of Wright, which the dissent now contends allowed an inference of intentional discrimination. This Court addressed the argument Underwood made, not the argument she might have made.

Although Underwood did not bring the affidavit to our attention, the Court thoroughly and independently reviewed the record on appeal, including the affidavit of Wright in the context of the argument of Underwood. The Court considered Wright as a potential comparator, see Underwood v. Perry County Comm'n, 431 F.3d 788, 795 (11th Cir. 2005), even though the contested employment application would have excluded Wright as a person hired instead of Underwood. This consideration did not resolve the ultimate problem for

4

Underwood under the <u>McDonnell</u> <u>Douglas</u> framework: that three males and two

females were hired near the time of Underwood's two applications for

employment.  <u>See</u> <u>id.</u>

WILSON, Circuit Judge, dissenting from the denial of rehearing en banc:

I dissent from the denial of rehearing en banc because this case "involves a question of exceptional importance," Fed. R. App. P. 35(a)(2): What evidence must a plaintiff put forth to satisfy her burden to establish a Title VII prima facie case of discriminatory failure to hire? This appeal would have provided the court an opportunity to clarify circuit law, specifically with respect to the fourth prong of the prima facie case–what level of evidence is necessary to establish that the position was filled with an individual outside the plaintiff's protected class. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (per curiam).

This case arose from the Perry County Commission's failure to hire Viola Underwood for a truck driver position in 2001. Taking the evidence in the light most favorable to Underwood, *see id.* at 767, she applied for the position with Perry County three times. Albert Paige, Supervisor of the Perry County Highway Department who was responsible for hiring decisions, never interviewed Underwood for the position, never recommended her for hiring, and never offered her a position. Underwood filed a Title VII suit, claiming that Perry County did not hire her because of her gender.

The district court granted Perry County's motion for summary judgment,

6

concluding that Underwood failed to meet the second prong of her prima facie case, i.e., that she was qualified for the position. The court reasoned that after-acquired evidence of two speeding tickets rendered Underwood unqualified to be a truck driver with Perry County, despite the fact that Paige was not aware of the speeding tickets at the time he declined to consider her for the job. Underwood appealed.

The opinion of this court affirmed summary judgment, but on different grounds. The opinion concluded that Underwood failed to meet the fourth prong of the prima facie case, i.e., to show that a person outside of her protected class was hired. *Underwood v. Perry County Comm'n*, 431 F.3d 788, 795 (11th Cir. 2005) (per curiam). The opinion was based entirely on Underwood's failure "to identify a position for which she applied and the gender of the person who filled that position . . . ." *Id.* The opinion discussed, but declined to address whether the after-acquired evidence of Underwood's speeding violations could defeat her prima facie case. *Id.* at 792, 794.

We use the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis to evaluate Underwood's failure to hire claim. First, the plaintiff must raise an inference of discrimination through her prima facie case. *Id.* at 802, 93 S. Ct. at 1824. To

7

establish a prima facie case, the plaintiff must prove that (1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was rejected for the position despite her qualifications, and (4) the position was filled with an individual outside the plaintiff's protected class. *Vessels*, 408 F.3d at 768.

I believe that the opinion erred in placing too heavy a burden on Underwood to establish the fourth element of her case, given that "a plaintiff's burden in proving a prima facie case is light." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (emphasis omitted); *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207, 215 (1981) ("The burden of establishing a prima facie case . . . is not onerous."); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam) ("Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."). The opinion accurately stated that "[o]ur precedent does not require Underwood to 'identify the successful applicant for a position under the *McDonnell-Douglas* prima facie framework; she is only required to establish that the successful applicant [was] not within her protected class.'" *Underwood*, 431 F.3d at 794 (quoting *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998)). But the opinion also says, "Underwood never identified the individual who received the other job for which she applied."; and, "On

8

appeal, Underwood still failed to identify the individual who was hired for the position for which she applied." *Id.* at 792, 795. These contradictory statements are confusing and mislead district courts and practitioners about the burden that plaintiffs bear in proving their prima facie case. By stating that Underwood "never identified the individual" who received the truck driving jobs that she applied for in January 2001, March 2001, and May 2001, the statements imply that she *was* required to identify who received the jobs she sought, despite our precedent to the contrary.

A close review of the record reveals that Underwood put forth sufficient evidence "to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. In response to Perry County's motion for summary judgment, Underwood submitted her deposition testimony that she applied to be a Perry County truck driver three times, in January 2001, March 2001, and May 2001. Also included in the record was Underwood's May 12, 2001, application, which affirms that she previously applied on March 10, 2001. Underwood also offered Paige's deposition testimony regarding three male comparators, Drake Wright, Stanley Stewart, and Kwame McLiney, each of whom was hired to drive a Class B truck for Perry County. Paige testified that Drake Wright was hired "probably . . . around 2000, 2001," that Stanley Stewart was hired "[p]robably somewhere mid

9

2001, early 2002;" and that Kwame McLiney was hired in "mid 2001." This evidence alone was sufficient to satisfy Underwood's prima facie burden, even without the comparators' personnel files to confirm their hire dates, given that a plaintiff's burden "is not onerous." *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1094.

The opinion found that Underwood failed to meet her burden of establishing that a male was selected for the truck driver positions because the record revealed that two females (Michelle Lee and Johnnie Shepherd) were also hired "near the time" that Underwood's applications were pending. *Underwood*, 431 F.3d at 795. The opinion concluded that "[t]he only inference about gender and the hiring of a truck driver was that both men and women were hired." *Id.* This construction of the evidence contradicts our law, which prohibits us from weighing the evidence to resolve a factual dispute, and instead requires us to view the evidence in the light most favorable to the non-movant. *Holifield*, 115 F.3d at 1561. "[I]f reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Id.*

First of all, the record does not necessarily reflect that Michelle Lee was hired to fill a position for which Underwood applied. Paige testified that Michelle Lee was hired in "2000, 2001, somewhere in there." According to Paige, after Michelle Lee initially accepted the position, however, "she called back and

10

rejected it because of the responsibility." Taking the evidence in the light most favorable to Underwood, Michelle Lee was hired and then rejected the position in 2000, before Underwood even first applied in January of 2001. Accordingly, Michelle Lee could not qualify as a female hired in place of Underwood for purposes of analyzing whether Underwood demonstrated that a person outside of her protected class was hired for the position. The district court likewise rejected the evidence put forth by Perry County that Michelle Lee was hired to fill the position that Underwood applied for: "*There has been no showing that Lee was hired to fill the position for which Underwood applied*. . . . Notwithstanding the utter lack of evidence on this front, defendants argue that '[i]t is undisputed that Albert Paige selected Michelle Lee for the truck driver position for which Plaintiff applied.' . . . *Such liberties with the record are unwarranted*." (emphasis added).

Similarly, Johnnie Shepherd cannot qualify as a female hired instead of Underwood, despite the fact that she was employed by the County for "[a]pproximately seven months," "somewhere in the neighborhood of 2001 to 2002." Perry County argued in its motion for summary judgment (and its reply to Underwood's opposition to its motion) that Michelle Lee – not Johnnie Shepherd – was the female that it hired instead of Underwood. Accordingly, it is irrelevant when Johnnie Shepherd was hired and worked for Perry County because, by Perry

11

County's own admission, Johnnie Shepherd was not a female hired in place of Underwood. The critical question here is about who Perry County hired instead of Underwood, and based on the undisputed evidence, "reasonable minds could differ" as to the answer to that question. *See Holifield*, 115 F.3d at 1561. Perry County should not be granted summary judgment based on the premise that Johnnie Shepherd was hired in place of Underwood, when Perry County itself did not even take that position. Accordingly, taking the evidence in the light most favorable to Underwood, Perry County hired only males for the three positions that Underwood sought.

Furthermore, given the evidence in this case, the opinion's rigid construction of the prima facie case, and in particular, the fourth prong, is misplaced. The Supreme Court has repeatedly stated that "[t]he *prima facie* case method established in *McDonnell Douglas* was *'never intended to be rigid, mechanized, or ritualistic*. Rather it is merely *a* sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403, 410 (1983) (emphasis added) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949, 57 L. Ed. 2d 957, 967 (1978)). In keeping with *McDonnell-Douglas*'s central goal

12

of determining the employer's state of mind, the plaintiff's prima facie case eliminates the most common non-discriminatory reasons that the employer may have relied on in deciding not to hire the plaintiff. *Burdine*, 450 U.S. at 253-54, 101 S. Ct. at 1094.

Here, Underwood put forth strong evidence of discriminatory motive by Perry County, evidence which the opinion completely ignored and the district court incorrectly dismissed. Perhaps the strongest and most disturbing evidence was the affidavit and employment application of Drake Wright, a Perry County truck driver, which Underwood submitted in response to Perry County's motion for summary judgment. In the affidavit, Wright stated the following:

> 2. In spring 2001, Albert Paige called for me over the radio, while I was working for Perry County Commission as a Class A driver. I was driving a class B dump truck when he called over the radio for me. I was told thereafter that Mr. Paige wanted to see me.
> 3. That evening, I met Albert Paige at the County Shed. Mr. Paige told me that they could not find my prior application for my truck driver job. Mr. Paige instructed me to fill out another application, attached hereto, and to leave the space for "date of application" blank. I did, and, as instructed, left the space for "date of application" blank. Regarding Viola Underwood's lawsuit against Perry County Commission, Mr. Paige told me that I was the "main topic of conversation" because they had hired me after she had applied.
> 4. I attended truck-driving school in Oxford, Alabama, for two weeks in late 2000.
> 5. The document attached hereto that purports to be my first application for employment with the Perry County Commission, dated

13

> October 10, 2000, is actually the second application I filled out, at Mr. Paige's instruction in the spring of 2001. It does not reflect the true date of my application because, as of October 10, 2000, I had not yet received my commercial driver's license.

Attached to this affidavit was the employment application that Wright referenced, dated October 10, 2000. Underwood argued that this evidence demonstrated that Paige hired Wright *after* Underwood applied for a job, clearly making Wright a comparator for purposes of this lawsuit. Paige ordered Wright to fill out an additional application, back-dating it to *before* the first date on which Underwood applied, in order to "cover his tracks." Underwood further testified that Wright was not the only one who was asked by Perry County to fill out another application in this manner. She testified that "[t]he people that got hired right at the same time that [she] was trying to get the job, that they had filled out different [applications]." The district court's only response to this evidence was to dismiss it in a footnote explaining, "plaintiff's accusation that Paige induced a male truck driver to fabricate and backdate a job application . . . is simply too remote from the issue [of whether Underwood established she was qualified for the position] to impeach or otherwise render suspect [Paige's] testimony about the driving record requirement." The district court missed the significance of this evidence

14

altogether, and the opinion of this court did not address it.[1]  This evidence is important because it raises a genuine issue of material fact as to whether and when Perry County hired a male (Drake Wright) for a truck driver position instead of Underwood.  It also raises a question as to whether Paige was manipulating or falsifying employment applications to cover up discriminatory hiring practices.

In sum, this published opinion muddies the water in evaluating a prima facie case, placing a heavier burden to establish that a person outside the plaintiff's protected class was selected for the job than our law allows.  Moreover, taking the evidence in this case in the light most favorable to Underwood, there are genuine issues of material fact as to whether a male was selected for the truck driver positions that she sought.

Accordingly, I respectfully dissent from the denial of rehearing en banc.

---

[1]As previously stated, summary judgment in the district court, and our court's initial affirmance at *Underwood v. Perry County Comm'n*, 417 F.3d 1183 (11th Cir.) *vacated,* 431 F.3d 788 (11th Cir. 2005) (per curiam), did not turn on this fourth element of a prima facie case, but was based on the second element: whether the plaintiff was qualified for a position and applied for it.  This may explain why, as the concurrence states, Underwood did not address specifically the Wright affidavit in her brief.  The Wright affidavit did not go to the issue of qualification. Regardless, we must review the entire record in the light most favorable to her to determine whether there was any genuine issue as to any material fact.  *Vessels*, 408 F.3d at 767.

15