[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14364
Non-Argument Calendar

_____

D. C. Docket No. 05-00010-CV-BE-E

DELOIS CHAMP,

Plaintiff-Appellant,

versus

CALHOUN COUNTY EMERGENCY
MANAGEMENT AGENCY,

Defendant,

CALHOUN COUNTY COMMISSION,
KENNETH L. JOINER, Calhoun
County Administrator,
JAMES A. DUNN, Calhoun
County Commissioner,
ROBERT W. DOWNING, Calhoun
County Commissioner,
JAMES ELI HENDERSON, Calhoun
County Commissioner, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(March 26, 2007**)

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Delois Champ appeals the district court's entry of summary judgment in favor of the defendants on her gender discrimination claims, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1983. This case involves the selection of Dan Long instead of Champ as the Director of the Calhoun County Emergency Management Agency ("CCEMA"). The district court found that Champ failed to establish a prima facie case of discrimination and that she also failed to show that the defendants' proffered legitimate non-discriminatory reasons were pretextual. On appeal, Champ disputes these findings. For the reasons set forth more fully below, we affirm.

We review the grant of summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party. Johnson v. Governor of State of Fla., 405 F.3d 1214, 1217 (11th Cir.) (en banc), cert. denied, 126 S.Ct. 650 (2005). Summary judgment should be granted

2

only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

We use the same framework to evaluate Champ's Title VII and § 1983 claims. See Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005). Because Champ relies upon circumstantial evidence, we apply the familiar framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination. Id. Once a prima facie case of discrimination is established, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its actions. Id. If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was a pretext for discrimination. Id.

In 1992, Champ began working at the CCEMA in the position of Public Information Officer/Exercise Manager. At that time, the Chemical Stockpile Emergency Preparedness Program ("CSEPP program") was being developed due to the storage of chemical weapons in Calhoun County. In January 2001, Champ

3

received a promotion to CSEPP Planner/Operations Manager. Champ held this position until March 2003, when the County Commission appointed her to the position of Interim Director of the CCEMA. The Director's position was vacant as a result Mike Burney's resignation, which occurred prior to the start-up of the chemical weapons incinerator. The incineration process began in August, during Champ's tenure as Interim Director.

Between June 3, 1989 and December 29, 2000, Long was employed at the CCEMA as the CSEPP Planner. Before his employment with the CCEMA, he was a Marine. As a Marine, he had 22 years of hands-on experience directly handling chemical weapons as well as chemical, biological, and radiological operation and management, including conducting training in the use of and defense against chemical weapons. From approximately June 2001 to December 2001, he worked as a security guard at the Chemical, Ordinance/Explosives, Biological, Radiological/Nuclear Training Facility ("COBRATF") on Fort McClellan, maintaining the security of chemical agents. He then worked as a Security Supervisor at the COBRATF for approximately two years.

The permanent Director's position was advertised and Champ and Long were two of the three applicants the committee who conducted the initial screening

4

process submitted to the Commission.[1]  Overall, the entire screening committee scored Long higher than Champ.  Ken Joiner, the County Administrator, and Commissioner Downing both served on the committee and each rated both Champ and Long as 11 out of 12.  Major P. May, who served 14 years as a Regional Director of the Federal Emergency Management Agency ("FEMA") before working as the Executive Officer/Bureau Chief of the Alabama Emergency Management Agency, gave Long a score of 12 and Champ a score of 11.  In response to Commissioner Abbott's request for a recommendation, Joiner declined to make a recommendation, but May stated that he would choose Long.  May explained that he would have chosen Long because he felt that Long was the most qualified, noting Long's extensive experience with CSEPP, vast military experience, and hands-on experience with chemical agents.

When the Commissioners informally expressed their opinions on which applicant to select, three supported Long and two supported Champ.  However, in the public meeting, the Commission voted unanimously to offer Long the position.  Commissioner Downing explained that he supported Champ because, when they went through the process of "scoring and all that" it was very close to the same, if not the same, and he felt that Champ was a known quantity, he knew her strengths,

---

[1] The third applicant was eliminated by the Commission due to his lack of CSEPP experience.

and felt some loyalty to her.

The three Commissioners who supported Long explained that they supported Long because he had extensive experience in relevant fields and a strong military background. These Commissioners found noteworthy Long's extensive CSEPP experience and his military experience where Long served in chemical, biological, and radiological operations and management and taught in a chemical weapons school. They felt that Long's military background and direct experience with chemical weapons would have a beneficial influence with Calhoun County citizens and that Long's former military experience made him the best equipped to deal with the military on matters concerning the destruction of chemical weapons. In choosing to support Long, they also took into consideration: (1) reports by Joiner concerning complaints Joiner received concerning Champ during her tenure as Interim Director; (2) Joiner's report that he counseled and orally reprimanded Champ for knowingly signing off on falsified payroll time sheets; and (3) her lack of communication with the Commission on issues that should have been discussed with the Commission. They were also bothered by Champ's inappropriate behavior toward the Commission when she requested that they hire her without an interview process and said such things as: "I've got two votes, and I need one more vote to forego the hiring process and appoint me to the position."

In order to establish a prima facie case, Champ must establish that: (1) she was a member of a protected class; (2) she was qualified and applied for the position; (3) she was rejected despite these qualifications; and (4) the position was filled by a person outside her protected class. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005) (failure to promote); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002) (failure to hire).[2] Although the district court set out these requirements, it then considered relative qualifications, concluding that a reasonable person exercising impartial judgment could have selected either candidate, but that the disparities were not so great that no reasonable person could have selected Long over Champ. However, under the standard set forth in Vessels and Joe's Stone Crabs, proof of relative qualifications is not part of the prima facie analysis. See Walker, 158 F.3d at 1193.

We conclude that Champ established a prima facie case. To meet the prima facie qualification requirement, the plaintiff need only show that she satisfied the employer's objective qualifications. Vessels, 408 F.3d at 769. The Director's position required a Bachelor's Degree in public administration, public safety, or

---

[2] The district court cited Joe's Stone Crabs for the prima facie standard. The defendants assert that Champ must also show that the person selected was equally or less qualified for the position. While there exists a intra-circuit split regarding the fourth element of the prima facie case, compare, e.g, Vessels, 408 F.3d at 768, with Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000), we will follow our decision in Walker v. Mortham, 158 F.3d 1177, 1185-93 (11th Cir. 1998), and apply the same standard as the district court.

7

related fields and/or extensive experience in related emergency operations with special emphasis in Chemical Stockpile Emergency Preparedness issues. The job description specified various knowledge, skills, and abilities required for the job. Champ worked at the CCEMA for over 10 years, was selected as one of the finalists for the Director position, and served as Interim Director. In addition, Commissioner Downing stated that he believed that Champ was qualified for the position. See Durley v. APAC, Inc., 236 F.3d 651, 654, 656 (11th Cir. 2000) (prima facie case established where supervisors testified that plaintiff was qualified for the position).

We, therefore, turn to the defendants' proffered reasons for Long's selection and Champ's contention that these reasons were pretextual. In their motion for summary judgment, the defendants asserted the following reasons for Long's selection: (1) Long's extensive experience in relevant fields and his strong military background; (2) Joiner's reports regarding complaints about Champ and his counseling and reprimand of Champ; (3) the manner in which Champ handled a public meeting and her behavior toward the Commission in approaching them for the position; and (4) the Commissioners' beliefs that Long was the most qualified.

Champ does not dispute that these constitute legitimate non-discriminatory reasons. However, she argues that the following evidence supports an inference of

8

discrimination: (1) the decision to advertise the Director position;[3] (2) her superior qualifications; (3) the implausibility of the defendants' reliance on Long's military, CSEPP, and security guard experience; (4) the falsity of complaints made against her; (5) justifications for her solicitation of the Commissioners' support; and (6) comments demonstrating the defendants' discriminatory animus.[4]

"[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for

---

[3] Champ also argues that the district court erred by failing to consider her claim that the decision to advertise and interview for the Director position was discriminatory, a claim the defendants contend was not raised before the district court. Citing her response to the defendants' motion for summary judgment, Champ replies that she clearly argued that the decision to require her to reapply for the Director's position was discriminatory. However, a party cannot amend her complaint to add a new claim through argument in a brief opposing summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Moreover, a review of Champ's complaint in light of Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure leads us to conclude that no such claim was asserted. Accordingly, the district court did not err in failing to consider this claim.

[4] As evidence of the Commissioners' discriminatory animus Champ relies upon her statements that County Administrator Joiner told her that Commissioner Abbott had problems with women and did not like her because she was a woman and that, while discussing her salary as Interim Director, County Attorney Tom Sowa told her that there were still some Commissioners who thought that it was the 1930's and 1940's regarding their view of women and the positions they are supposed to hold. Champ contends that these statements were not hearsay under Fed.R.Evid. 801(d)(2), as they constituted statements by a party-opponent because Joiner, Sowa, and the Commissioners were all upper level members of County management. The defendants respond that Champ did not lay the proper foundation to establish that Joiner and Sowa's statements were admissible as admissions by a party opponent under Rule 801(d)(2)(D), as she merely showed that the statements were made by someone generally identified as an agent or employee. The content of the statement must concern a matter within the scope of the declarant's employment or agency. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 558 n.10 (11th Cir. 1998). We agree with the defendants that Champ has not laid a proper foundation for the admission of these statements, and, therefore, we do not consider them. See Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir. 2004) ("Inadmissible hearsay generally cannot be considered on a motion for summary judgment.").

discrimination." Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and quotation marks omitted) (alternations in original). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." Wilson, 376 F.3d at 1088. The plaintiff can show pretext through evidence that (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels, 408 F.3d at 771 (citation and quotation marks omitted). Where multiple reasons are advanced, the plaintiff must show that each reason was pretextual. Cooper v. Southern Co., 390 F.3d 695, 725-26 (11th Cir. 2004). Moreover, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Brooks, 446 F.3d at 1163 (citation and emphasis omitted).

Regarding the decision to advertise the position, Champ asserts that she was promised the permanent position and performed satisfactorily, but was treated different from Jim Bennett, Burney, and Long, who were hired as Director on a

temporary basis and did not have to reapply before receiving the permanent position. "[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1299 (11th Cir. 2006); see also Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001) ("An employer's violation of its own normal hiring procedure may be evidence of pretext."). In this case, however, Champ cannot create a genuine issue of material fact as to whether the decision to advertise the Director position was pretext for discrimination because the situation at the time Champ was appointed to the Interim position differed from the other Directors and the evidence did not support Champ's assertion that the Commission decided to advertise the position after she was promised the permanent position.

Both Bennett and Long were hired after the position was advertised. Although the position was not advertised prior to Burney's selection, Burney was selected for the position based on the recommendation of Bennett, the retiring Director. Commissioner Downing explained that the Commission had a lot of confidence in Bennett, who was a very strong director and who strongly recommended Burney for the Director position, and he believed that was probably why the Commission went along with Bennett's recommendation. Unlike Bennett

11

and Long, Champ received her Interim position without any advertisement of the position. Although County Administer Joiner recommended Champ for the Interim position, it was based on her tenure, and a majority of the Commissioners supported Champ because of the critical undertakings at the CCEMA when Burney resigned.

In response to Champ's inquiries about whether she had a chance of being the permanent director when she was asked to take the position, Joiner said he thought that she had a good chance, and Commissioner Dunn told her that she had a "good chance" of being permanent.[5] Even though Champ testified that she initially did not understand that there would be a hiring process and did not learn of the decision to advertise the Director position until August, three Commissioners stated that they were in favor of advertising the position from the time Burney resigned, but that the position was not advertised immediately because it could have undermined the CCEMA's effectiveness in completing preparations for the destruction of chemical weapons. Joiner also testified that the Director position was going to be advertised from "day one" but was delayed.

Turning to the Commissions' decision to select Long over Champ, we do not

---

[5] This evidence is based on Champ's deposition testimony. We do not consider Champ's statement in a subsequent declaration that Dunn told her that the position would be made permanent. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).

"sit in judgment of the wisdom of an employer's selection." Cooper, 390 F.3d at 732. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation and quotation marks omitted). Furthermore, the plaintiff cannot merely put forth evidence that would allow us to conclude that the plaintiff was better qualified. See Brooks, 446 F.3d at 1163-64. To show pretext based on qualifications, a plaintiff must show "that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Id. at 1163 (quoting Cooper, 390 F.3d at 732). "However, where the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." Vessels, 408 F.3d at 772 (emphasis in original).

As an initial matter, we dispose of Champ's contention that in Brooks we implicitly held that, when the employee actually held the position, no reasonable person could fail to choose that employee over someone who never held the position. In Brooks, the employer's reasons for its selection were the candidate's

13

superior qualifications and the firsthand experience she gained while holding the interim position.  Brooks, 446 F.3d at 1163.  We held that the plaintiff failed at the pretext stage because, on the record before us, she could not establish the requisite qualifications disparity and failed to put forth evidence that discrimination was the real reason for the decision.  Id. at 1163-64.  Brooks, thus, does not stand for the broad proposition that service in an interim position is, in and of itself, sufficient to preclude a reasonable person from selecting anyone else for the permanent position.

Champ and Long worked for the CCEMA for approximately the same amount of time. Champ served as the Public Information Officer/Exercise Manager from 1992 until January 2001, when she was promoted to CSEPP Planner/Operations Manager.  She held this position for a little over two years, and then was promoted to Interim Director in March 2003.  She served as the Interim Director during a critical period of time due to the beginning of the incineration process.  Long spent significantly more time in the CSEPP planner position than Champ, holding the position for approximately 11 years, between 1989 and 2000.  Both Long and Champ were involved in the development and operation of the CSEPP program.  Long had no supervisory experience at the CCEMA during the 10 years that Bennett was Director, although he held a supervisory position for

14

approximately two years after leaving the CCEMA. As Operations Manager and then as Interim Director, Champ had approximately three years' total experience supervising CCEMA employees.

In her position as Interim Director, Champ gained experience performing the duties of the Director position—direct experience which Long did not have. In addition, because Champ remained at the CCEMA and Long took a security position, Champ had up-to-date experience with the CCEMA programs. Unlike Champ, Long served as a Marine, during which time he accumulated 22 years of hands-on experience directly handling chemical weapons as well as chemical, biological, and radiological operation and management, including conducting training in the use of and defense against chemical weapons. After he left the CCEMA in 2000, Long worked approximately two and a half years in security, maintaining the security of chemical agents. The Commissioners who supported Long felt that Long's military background and direct experience with chemical weapons would have a beneficial influence with Calhoun County citizens and that Long's former military experience made him the best equipped to deal with the military on matters concerning the destruction of chemical weapons.

People other than the decision-makers in this case were divided on the issue of who was better qualified for the Director position. At the time Bennett retired,

he believed that Champ was more qualified than Long, and would have recommended Champ over Long for the Acting Director position had Burney not accepted the position. May, who served on the screening committee to fill the Director position, scored Long one point higher than Champ and believed that Long was more qualified.

On this record, a determination of who was more qualified for the Director's position turns on a judgment call as to whether experience performing the duties of the Director combined with up-to-date knowledge of CCEMA programs and operations was more valuable than an equivalent length of experience working for the CCEMA combined with more overall related experience and with particular experiences the decision-makers, who are elected officials, cf. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 2000) ("We expect, for example, that an elected official may appoint a command team, or a political staff, that not only is objectively qualified to handle its day-to-day job duties, but that also shares a vision with and possesses a certain degree of loyalty to the elected official who appoints them."), believe will be favorably received by the public and will allow for better communication with the military. Given the importance of the safe destruction of the chemical weapons, a reasonable employer could be motivated to select a Director whom it felt would interact well with the citizens and the military.

16

Under these circumstances, we cannot conclude that Champ has created a genuine issue of material fact as to pretext based on relative qualifications. By pointing to her qualifications for the position and questioning the value of Long's experiences, Champ is questioning the wisdom of the Commissioners' reasoning, which is insufficient to establish pretext. See Pennington, 261 F.3d at 1267.

In addition, the three Commissioners who supported Long also considered Joiner's reports concerning employee complaints and his counseling and reprimand of Champ. Champ has denied that she was ever counseled by Joiner and denied the truth of any complaints by CCEMA employees. However, she has not put forth any evidence to suggest that these Commissioners' belief of Joiner's reports was unworthy of credence. Honest reliance on inaccurate information is not discriminatory. Ledbetter v. Goodyear Tire & Rubber Co., Inc., 421 F.3d 1169, 1187 n.21 (11th Cir. 2005), cert. granted, 126 S.Ct. 2965 (2006). Thus, it is insufficient to merely dispute whether an incident occurred without presenting evidence that the decision-maker's belief that those incidents occurred was unworthy of credence. See Vessels, 408 F.3d at 771. Accordingly, Champ cannot establish that this reason is pretextual.

Similarly, these same Commissioners were also concerned with Champ's behavior toward the Commission, in that Champ requested that they hire her

17

without an interview process and said such things as: "I've got two votes, and I need one more vote to forego the hiring process and appoint me to the position." Champ attempts to show pretext by justifying her solicitation of the Commissioners,[6] but that does not demonstrate that the Commissioners could not legitimately be concerned with her actions and the manner in which Champ solicited their support.

Champ also argues that one of the reasons the defendants initially gave for Long's selection, his development of the entire CSEPP program, was false. Long was deeply involved in the development of the program, but he admitted that he did not develop the entire CSEPP program. Even though this reason was not totally accurate, summary judgment is still appropriate due to Champ's failure to demonstrate that the remainder of the defendants' proffered reasons were pretextual. Cooper, 390 F.3d at 725-26. In light of the foregoing, the district court is **AFFIRMED.**

---

[6] In addition, Champ relies on her statement that other people, including Long, solicited the Commissioners' support. However, she admitted that her statement is not based on personal knowledge.