[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 11, 2008
THOMAS K. KAHN
CLERK

-------------------------------------------

No. 07-14108
Non-Argument Calendar

-------------------------------------------

D.C. Docket No. 05-00174-CV-WLS-1

DR. FREDERICK POLITE,

Plaintiff-Appellant,

versus

DOUGHERTY COUNTY SCHOOL SYSTEM,
SALLY WHATLEY, Individually and in her
Official Capacity as Superintendent of the
Doughtery County School System,

Defendants-Appellees.

----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Georgia

----------------------------------------------------------------

**(August 11, 2008)**

Before EDMONDSON, Chief Judge, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Frederick Polite, an African-American male, appeals the district court's grant of summary judgment in favor of his former employer Dougherty County School System ("DCSS") and DCSS superintendent Sally Whatley, ending his discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. §§ 1981, 1983, and dismissing several state law claims.[1] No reversible error has been shown; we affirm.

Polite formerly worked for DCSS as a math and science teacher. His claims stem from his failure to be hired as a principal or assistant principal after applying for several such positions at certain schools in DCSS. Whatley is responsible for recommending to DCSS persons to be hired. For assistant principals, Whatley depends on the principal of the hiring school to make a recommendation to her. Principals generally rely on a leadership committee at their school to assist them with interviewing and recommending candidates. The principal makes a recommendation to Whatley; and she then makes a recommendation to the school board. In selecting a principal, a selection committee at the school interviews qualified applicants and recommends its top two or three choices to Whatley. She

---

[1] Claims against state actors for violations of section 1981 must be brought pursuant to section 1983. Butts v. County of Volusia, 222 F.3d 891, 892-94 (11th Cir. 2000). Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1275 n.5 (11th Cir. 2008).

then evaluates whether the top selection is appropriate and makes a recommendation to the Board. In her tenure as superintendent, Whatley has endorsed to the Board every recommendation made to her by principals and selection committees. According to Whatley, no one ever had recommended Polite to her for a principal or assistant principal position; and she never told anyone not to recommend Polite for a position.

Polite interviewed with selection committees to be considered for various principal and assistant principal positions within DCSS. Based on a conversation he had with Valerie Overstreet-Thomas, the principal at Lamar Reese Elementary School, he understood that Overstreet-Thomas had recommended him for the assistant principal position at that school; but Polite never interviewed personally with Overstreet-Thomas. She informally interviewed Polite over the phone and planned to recommend him and one other person for the assistant principal position, but after checking his references, decided against recommending Polite. Though she initially told Whatley she planned to recommend Polite, she ultimately did not recommend him. Polite also stated that Johnny Scott, the principal at Southside Middle School, "basically promised" him the assistant principal position there; but then, according to Polite, Scott told him that Whatley would not allow his recommendation to go through. Scott stated that he told Polite he had

3

decided to recommend another person for the position and that he never promised Polite the position.

In his complaint, Polite alleged that DCSS and Whatley, by failing to hire him, unlawfully discriminated against him because of his sex and race. The district court concluded that Polite had not made a prima facie case of discriminatory failure to hire.

On appeal, Polite argues that the district court erred in determining that he did not make a prima facie case of failure to hire because he was recommended for the positions in question,[2] but Whatley rejected him. We review a district court's grant of summary judgment de novo; we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

A prima facie case of hiring or promotion discrimination requires a plaintiff to prove the following things: (1) he belonged to a protected class, (2) he applied for and was qualified for a job for which the employer was seeking applicants, (3) despite these qualifications, he was rejected, and (4) after the rejection, the

---

[2]Polite abandoned the following claims by failing to offer argument on them: hostile work environment under Title VII, violations of freedom of speech, association and to petition the government under section 1983 and the Georgia Constitution, equal protection and due process violations under section 1983, and state law breach of contract. See Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001) (explaining that issues not briefed on appeal are abandoned).

employer continued to seek applications from persons with similar qualifications or promoted a person outside the protected class. Perryman v. Johnson Prods. Co., Inc., 698 F.2d 1138, 1142 nn.6-7 (11th Cir. 1983).[3]

The district court committed no error when it concluded that Polite did not make a prima facie case of discriminatory failure to hire. That Polite never was recommended to Whatley -- either by a principal or selection committee -- for a position is undisputed; and thus, Whatley never rejected him for a position. See id.[4] As per hiring policy, Whatley recommended to the Board a candidate who a principal or selection committee had recommended to her. Because Polite never was recommended to her, she never considered him in her recommendations to the Board.[5] In his affidavit opposing summary judgment, Polite alleged that Overstreet-Thomas and Scott recommended him to Whatley; but these allegations were not based on personal knowledge and were contradicted directly by the deposition testimony of Overstreet-Thomas and Scott, who did have personal

---

[3]No direct evidence of discrimination is alleged. Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), applies.

[4]The district court concluded that, because Polite never was recommended for a position pursuant to DCSS hiring practices, he had not "applied" for the positions. It is clear that Polite did apply for the positions but was not recommended for them. This misconstruction of the word "apply" does not impact on the ultimate correctness of the district court's decision.

[5]Polite made clear in his complaint and deposition that he believed only Whatley had discriminated against him.

5

knowledge of whether they made such recommendations.  See Fed.R.Civ.P. 56(e)(1) (an affidavit opposing summary judgment must be made on personal knowledge and set out facts that would be admissible in evidence).

We now address Polite's retaliation claim.  He alleged that, during his employment with DCSS, he complained to Whatley about her "discriminatory hiring practices."  And shortly after his complaints, he was transferred to a different school in DCSS.  He alleged that the transfer was in retaliation for complaining about Whatley's hiring practices.  On appeal, Polite argues that the transfer violated DCSS policy and, thus, was direct evidence of retaliation.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show, among other things, that he suffered an adverse employment act. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  An adverse employment act is "[a] tangible employment action [that] constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits."  Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir. 2008) (internal quotation and citation omitted).  The act must be such that "a reasonable employee would have found the

6

challenged action materially adverse." Burlington N. & Santa Fe. Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

The district court committed no error in granting summary judgment on Polite's retaliation claim because he suffered no adverse employment act. His teaching job after the transfer involved the same responsibilities, and he had the same pay. He stated in his deposition that he got along well with the principal at his new school. Thus, his employment status was not materially adversely affected by the transfer.[6]

On appeal, Polite also challenges the district court's dismissal of his state law claims on sovereign immunity grounds. He contends that because DCSS had liability insurance, it waived its sovereign immunity. Sovereign immunity extends to the state and all of its departments and agencies and can be waived only by a legislative act specifically delineating the waiver. Ga. Const. Art. I, § 2, ¶ IX(e). While the Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for torts of its officers and employees, this waiver expressly

---

[6]The district court correctly granted summary judgment on all Title VII claims against Whatley in her individual capacity: Title VII does not provide for suits against persons in their individual capacities. Cross v. State of Ala., 49 F.3d 1490, 1504 (11th Cir. 1995). Because the section 1981 claims, brought pursuant to section 1983, against Whatley were brought as a "parallel remedy" for Title VII violations, summary judgment also was appropriate on those claims. See Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005) (Title VII and section 1983 use the same analytical framework when section 1983 is used as a parallel remedy for a Title VII violation).

excludes school districts. O.C.G.A. § 50-21-22(5). Polite has not shown that DCSS waived its immunity because he points to no legislative act providing for a waiver. In addition, because Whatley was a state employee whose alleged tort was committed while acting within the scope of her employment, she also was entitled to immunity. O.C.G.A. § 50-21-25(a).

AFFIRMED.[7]

---

[7]We briefly address Polite's remaining arguments. He argues that the district court erred in denying his motion to increase the number of depositions he could take from 10 to 20. But Polite offers no substantive argument on why this decision was in error; we deem this argument waived. See Flanigan's Enters., Inc. of Ga. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (a party waives an issue where, although the issue was mentioned in passing, the party did not elaborate or provide any citation of authority in support of the issue). He also argues that the district court erred in denying his motion to strike Watley's affidavit in support of summary judgment. But motions to strike are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary judgment, which is not a pleading. See Fed.R.Civ.P. 7(a), 12(f). Contrary to Polite's unsupported assertions on appeal, nothing evidences that the district court viewed the evidence in the light most favorable to Defendants or that Defendants did not seek summary judgment on all of his claims. The record shows that the district court adequately evaluated and considered the evidence before it and applied the correct legal standards in deciding the summary judgment motion.