[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11877
_____

D.C. Docket No. 1:11-cv-03969-AJB

KIMBERLY EUBANKS,

Plaintiff - Appellant,

versus

HENRY COUNTY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 9, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Kimberly Eubanks appeals the district court's grant of summary judgment to her employer Henry County on her gender discrimination claim. After careful review, and with the benefit of oral argument, we affirm.

I.

Eubanks first worked for the County's Building Department as a residential building inspector from 2000 until 2002, when she left for another job. Unsatisfied with her new job, Eubanks returned to her position as a residential inspector with the Building Department just 38 days later. In approximately 2006, she was promoted to commercial building inspector and remained in that position until her termination in June 2011.

To determine seniority, the County generally looks to an employee's start date. When an employee has a break in service, the employee's re-hire date is generally used as the start date for seniority purposes. But, in certain instances, the County has bridged an employee's break in service and used her initial hire date to determine seniority. In April 2010, Eubanks requested that the County bridge her break in service so that her start date would be in 2000, not 2002. Because the County had no policy on bridging, the County Manager, Butch Sanders, decided to take no action on Eubanks's bridging request until he developed a formal bridging policy.

In 2011, facing revenue shortfalls, the County implemented a reduction in force to cut spending. In total, the County eliminated 59 positions, including six in the Building Department. Sanders, who was responsible for approving the list of positions to be eliminated in the reduction in force, delegated the responsibility for identifying the positions to be cut to the head of each County division. The division heads were instructed to consider both seniority and which employees could best contribute given the reduced size of the County's workforce.

Michael Harris, the head of the Planning and Zoning Division, was responsible for identifying the positions to be eliminated from the Building Department. Although the Building Department had three separate types of employees (residential inspectors, commercial inspectors, and administrative staff), Harris did not consider each group separately. Instead, he proposed eliminating the positions of the six most junior employees in the department. Under this proposal, three residential inspectors, one commercial inspector, and two administrative positions would have been cut. After these cuts, no residential inspectors would have remained in the Building Department. Under Harris's proposal, whether Eubanks would remain employed by the County depended on whether her service was bridged. If her service was bridged, she would not have been one of the most junior employees, and her employment would not have been

3

terminated.  If her service was not bridged, however, she would have been terminated.

In May 2011, before the reduction in force occurred, the County Commission disclosed at a public meeting the list of positions proposed to be cut. This list reflected Harris's proposal that three residential inspectors, one commercial inspector, and two administrative positions be eliminated from the Building Department.

After the meeting, Burt Foster, the head of the Building Department who reported to Harris, learned for the first time of the positions in the Building Department that would be eliminated.  He disagreed with the proposal to eliminate all of the residential inspector positions because he believed that the Building Department operated best with separate residential and commercial inspectors. Foster asked Harris and Sanders to retain Butch Friel, the Chief Residential Inspector.

On May 31, 2011, the Commission adopted the County's budget, which reflected the reduction in the County's workforce as previously disclosed at the public meeting.  Approximately a week later, Sanders and Harris changed the list of positions to be cut from the Building Department to save Friel's position. Instead of eliminating three residential inspectors, one commercial inspector, and two administrative positions, the new proposal eliminated two residential

4

inspectors, two commercial inspectors, and two administrative positions (the "2-2-2 Plan").  The County made no public announcement that it had changed the list of positions being eliminated.  Eubanks lost her job as part of the reduction in force under the 2-2-2 Plan because whether her hire date was in 2000 or 2002, she was still one of the two most junior commercial inspectors.  At the time of her termination on June 10, 2011, Sanders still had taken no action on her bridging request.

Eubanks sued the County in district court for gender discrimination.  The district court granted summary judgment to the County.[1]  This is Eubanks's appeal.

## II.

We review a grant of summary judgment *de novo* and "draw all inferences and review all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (internal quotation marks omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory allegations and speculation are insufficient to create a

---

[1] The parties consented to a magistrate judge hearing the case.

5

genuine issue of material fact. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)).

## III.

## A.

Eubanks alleges that she was terminated on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Because Eubanks relies on circumstantial evidence to prove her gender discrimination claim, we use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate her claim at the summary judgment stage. *Underwood v. Perry Cnty. Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005) (per curiam). Under this framework, Eubanks first had to establish a prima facie case of discrimination, which creates a presumption of discrimination. Because Eubanks was terminated as a part of a reduction in force, to establish a prima facie case Eubanks was required to show that she: (1) was a member of a protected group; (2) suffered an adverse employment action; (3) was qualified for her position at the time of discharge; and (4) has produced evidence "from which a rational fact finder could conclude that [her] employer intended to discriminate [against her] in making the discharge decision." *Standard v. A.B.E.L. Servs., Inc.*,

6

161 F.3d 1318, 1331 (11th Cir. 1998).  For our purposes, we assume that Eubanks established a prima facie case.

The burden then shifted to the County "to rebut the presumption of discrimination by advancing legitimate, nondiscriminatory reasons" for Eubanks's discharge.  *Id.*  The County explained that it terminated Eubanks as a part of a reduction in force brought about by a decline in the County's revenue.  Instead of terminating the six most junior members of the Building Department, which would have eliminated all the residential inspector positions, the County decided to adopt the 2-2-2 Plan, cutting two positions from each of the Department's three employee groups (residential inspectors, commercial inspectors, and administrative employees).  According to the County, the purpose of the 2-2-2 Plan was to avoid eliminating all the residential inspector positions.  The County also explained that it decided to retain Friel, who was serving as the Chief Residential Inspector, over Eubanks because he was more qualified:  he had experience as a residential inspector supervisor, he could perform administrative tasks, and keeping him would maintain continuity with respect to residential inspections.

Because the County rebutted the presumption of discrimination, the burden shifted back to Eubanks to offer evidence that the County's proffered reasons were pretextual.  *Id.* at 1332.  To satisfy this burden, Eubanks had to come forward with "sufficient evidence to allow a reasonable fact finder to conclude that the proffered

7

reasons were not actually the motivation for [her] discharge." *Id.* At this stage, Eubanks had to show the County "intentionally discriminated" against her. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000). Eubanks tried to show pretext "indirectly" by demonstrating that the County's "proffered explanation[s] [were] unworthy of credence." *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Eubanks's burden was to show "not just that [the County's] proffered reasons for firing her were ill-founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) (explaining that under *Reeves* "showing only that proffered reasons are false does not necessarily get plaintiff past summary judgment").

To demonstrate pretext, Eubanks had to show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted). When an employer offers several legitimate, non-discriminatory reasons for its employment decision, the plaintiff must show that "each of [the employer's] proffered reasons" is not credible. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538-39 (11th Cir. 1997).

8

B.

The question before us is whether Eubanks has shown that the County's proffered reasons for terminating her were a pretext for discrimination. In essence, the County advances two reasons why it terminated Eubanks because: (1) it adopted the 2-2-2 Plan in order to keep a dedicated residential inspector and (2) Friel was more qualified than Eubanks for that position. Having carefully considered Eubanks's arguments and the record, we conclude that no reasonable factfinder, viewing all the evidence in the light most favorable to Eubanks, could determine that the County's reasons for terminating Eubanks were unworthy of credence. Because Eubanks has failed to meet her burden, her gender discrimination claim cannot survive summary judgment.

The County asserts that it adopted the 2-2-2 Plan to save a residential inspector position because Foster, the head of the Building Department, believed that the Building Department operated most efficiently with dedicated residential inspectors.[2] Importantly, Foster was unaware that Eubanks had asked that her service be bridged, and there is no evidence he knew that if the County adopted the

---

[2] Eubanks contends that a reasonable jury could find that the County made up the 2-2-2 Plan during litigation because there is no evidence that the 2-2-2 Plan existed until after she took legal action. But no reasonable jury, even viewing the evidence in the light most favorable to Eubanks, could conclude that the County concocted the 2-2-2 Plan after the fact. The record contains an email dated May 26, 2011—two weeks before Eubanks was terminated—from Foster to Harris explaining why the County should keep Friel as a residential inspector. Although Foster's email does not call his proposal the "2-2-2 Plan," it shows that the County was considering the substance of the 2-2-2 Plan before it implemented the reduction-in-force.

2-2-2 Plan, Eubanks would be let go. Putting this evidence together, no reasonable jury could infer that Foster created the 2-2-2 Plan to terminate Eubanks.

Eubanks focuses instead on the fact that Sanders and Harris also approved the 2-2-2 Plan, arguing that a reasonable jury could infer that they agreed to the 2-2-2 Plan as a way to get rid of Eubanks. We disagree. We fail to see how the evidence that Sanders and Harris approved the 2-2-2 Plan supports an inference that they intended to use it to get rid of Eubanks. Eubanks points to evidence that Sanders never granted her bridging request even though previous County Managers had bridged service for male employees. But, even assuming those employees were similarly situated to Eubanks, the evidence that Sanders never acted on her bridging request, standing alone, does not suffice to support an inference that he agreed to the 2-2-2 Plan in order to force her out.[3]

Eubanks also argues that a reasonable jury could infer that the County adopted the 2-2-2 Plan in order to terminate her from the County's failure to follow its policies requiring it to give the notice to the public and the County Commission to approve of the positions being eliminated. Even assuming a reasonable jury could find that the County was required to provide notice and that the County Commission was required to approve each position being eliminated, the County

---

[3] Indeed, had Sanders's and Harris's true intent been to ensure that Eubanks was terminated, they could simply have stuck to Harris's original proposal which, without bridging, would have resulted in her position being eliminated.

explained that it changed to the 2-2-2 Plan and decided to eliminate two commercial inspector positions after the May meeting at which it notified the public of the positions being eliminated.[4]  And there is also evidence, which Eubanks has not refuted, that the County Commission ultimately did approve the change to the 2-2-2 Plan.  In the light of this evidence, no reasonable jury could infer that the County's proffered reason for adopting the 2-2-2 Plan was unworthy of belief.  In any event, an employer's failure to follow an employment policy or procedure does not necessarily indicate that an employer's proffered reason was a pretext.  *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007).  Simply put, Eubanks has failed to demonstrate such weakness in the County's proffered reason for adopting the 2-2-2 Plan that a reasonable jury could conclude it could not be believed.

In addition, the County explained that it decided to fill the sole residential inspector position with Friel instead of Eubanks because he was the more qualified candidate who could better contribute to the Building Department given its reduced size.  It considered Friel the better candidate because keeping him would maintain

[4] Eubanks cites evidence that the County adopted the 2-2-2 Plan as early as May 12, 2010 when the County's Human Resources Director reminded Harris of Eubanks's pending request for bridging, and he responded that "it [didn't] appear that [it was] going to make any difference." *See* Angela Bailey Dep. at 82 (Doc. 76-1). ("Doc." refers to the docket entry in the district court record in this case.)  But even if this evidence supports Eubanks's argument, we note that she did not present this argument in the district court because she contended below that the conversation occurred after May 31.  We decline to address this new argument raised for the first time on appeal, which the district court never had a chance to consider. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

11

continuity in the Building Department with respect to residential inspections, he had experience supervising residential inspectors, and he had experience performing administrative tasks.

Eubanks contends that the County's reasons for keeping Friel were unworthy of credence because she was better qualified. She argues that she had experience performing both residential and commercial inspections, had more certifications than Friel, and could perform any administrative duties that were required. But we must defer to the County's business judgment evaluating the strength of the candidates: Eubanks can overcome the County's business judgment only by showing that the disparity in qualifications was so great "that no reasonable person could have chosen [Friel] over [Eubanks]." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004). Given that (1) Eubanks and Friel had roughly the same years of experience working as inspectors with the County, (2) Friel had most recently worked on residential inspections while Eubanks had worked on commercial inspections, and (3) Friel had supervisory and administrative experience, we cannot say that no reasonable person would have selected Friel over Eubanks. Therefore, we conclude that Eubanks has failed to show that the County's determination that Friel was the more qualified candidate was unworthy of belief.

12

Eubanks also points to Sanders's testimony that one reason why Friel was the better candidate was because he could perform both commercial and residential inspections when, in fact, Friel could not perform commercial inspections. Although this evidence shows that Sanders had a mistaken belief about Friel's qualifications, we have explained that a mistaken belief about an employee's qualifications does not demonstrate pretext. *See Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001). Moreover, Sanders testified that this was only one of several reasons why Friel was the more qualified candidate; this evidence alone does not demonstrate that the County's other reasons for believing Friel was more qualified were not credible.

Finally, Eubanks relies on a history of past discrimination she experienced while working for the County, including that she was paid a lower salary when she first was hired and was passed over for a promotion in 2006 allegedly because of her gender. Eubanks concedes, however, that any claims based on these incidents are time barred. She nonetheless urges us to consider this history as evidence of the County's pattern of discrimination. Even considering this evidence, Eubanks has not shown that any individuals who previously discriminated against her played any role in her termination in the 2011 reduction in force. Thus, we cannot conclude that this evidence demonstrates that the County's proffered legitimate, non-discriminatory reasons were pretextual.

13

In sum, although Eubanks has cast some doubt upon some of the County's reasons for terminating her instead of Friel, she has failed to show that all of its reasons were unworthy of credence and, importantly, that the reasons were a pretext for intentional discrimination.  *See Alvarez*, 610 F.3d at 1267.

## IV.

The district court properly granted summary judgment to the County.  We therefore affirm the district court's entry of summary judgment.

**AFFIRMED.**